IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RICARDO MARTINEZ, § | |
| TDCJ No. 2014590, § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | No. 3:17-cv-1967-B-BN |
| § | |
| LORIE DAVIS, Director § | |
| Texas Department of Criminal Justice § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Ricardo Martinez, a Texas prisoner serving a life sentence for felony murder, filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254 challenging his state criminal judgment, in which he asserts five grounds of ineffective assistance of counsel ("IAC") against his counsel at trial and on appeal. *See* Dkt. No. 3. His case is now referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle.

The State filed a response opposing relief. *See* Dkt. No. 15. And Martinez replied. *See* Dkt. No. 20.

On May 28, 2020, the undersigned entered findings of fact and conclusions of law recommending that the Court deny Martinez's federal habeas relief petition [Dkt. No. 23] (the "Initial FCR"). These amended findings, conclusions, and recommendation supersede the Initial FCR. The Initial FCR is therefore

WITHDRAWN. And the service of these amended findings, conclusions, and recommendation on Martinez restarts the period in which he may file objections, as further explained below.

## Applicable Background

Martinez "was convicted of the offense of felony murder and sentenced to the Institutional Division of the Texas Department of Criminal Justice (ID – TDCJ) for life." *Martinez v. State*, No. 07-15-00353-CR, 2016 WL 1572275, at *1 (Tex. App. – Amarillo Apr. 11, 2016, pet ref'd) (footnote omitted); *see State v. Martinez*, Tr. Ct. No. F49348 (413th Dist. Ct., Johnson Cnty., Tex.).

> In the early morning hours of March 8, 2015, appellant was involved in a fatal automobile collision on Highway 67 in Johnson County, Texas. At the time of the collision, appellant was traveling in a southwesterly direction in the vehicle traffic lanes designated for northeasterly travelling traffic. As a result of the collision, C.D. was killed.
> Appellant was transported to Texas Health-Harris Methodist Hospital in Fort Worth, Texas, for treatment of his injuries. While appellant was receiving treatment in the emergency room at the hospital, ten vials of blood and one vial of urine was taken from him. On March 9, 2015, a grand jury subpoena was served on the hospital and the samples were picked up by Detective Scott Heisey of the Alvarado Police Department. Heisey then transported the samples to the Tarrant County Medical Examiner's Office (TCME).
> The whole blood samples were examined by Aria McGill, a forensic toxicologist at TCME. The result of the testing of appellant's blood was an alcohol concentration of .21 grams/deciliter.
> Based upon appellant's prior criminal record, he was indicted for murder pursuant to the felony-murder provision of section 19.02(b)(3). The underlying felony driving-while-intoxicated allegation was based on appellant's two previous driving-while-intoxicated convictions.
> Prior to trial, appellant filed the first of two motions to quash the indictment. The trial court overruled both motions. …
> Appellant also filed a motion to suppress the blood test results, contending that the blood samples were obtained in violation of his constitutional rights pursuant to the Fourth Amendment of the United

> States Constitution and Article I, Section 9 of the Texas Constitution. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The trial court heard appellant's motion to suppress the evidence on August 10, 2015. The trial court denied the motion and filed findings of fact and conclusions of law.
>
> Trial commenced on August 17, 2015, with voir dire examination of the prospective jurors. After selecting a jury, appellant entered a plea of not guilty to the indictment and not true to each of the driving-while-intoxicated enhancement allegations. Appellant's trial concluded on August 20, 2015, when the jury returned a verdict of guilty to the charge of murder, as contained in the indictment. After hearing the punishment evidence, the jury sentenced appellant to life imprisonment in the ID – TDCJ.

*Martinez*, 2016 WL 1572275, at *1-*2 (footnotes omitted).

Martinez's criminal judgment was affirmed on appeal. *See generally id.* The Texas Court of Criminal Appeals ("CCA") refused his petition for discretionary review. *See Martinez v. State*, No. PD-0468-16 (Tex. Crim. App. Aug. 24, 2016). And the CCA denied his state application for habeas relief without written order. *See Ex parte Martinez*, WR-86,366-01 (Tex. Crim. App. Mar. 15, 2017).

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins (and often ends) with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted). And, under AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g., Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state

court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under §

2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s]

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the

doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

The Court reviews IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that Strickland's first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). And,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state

habeas court's assessment of that performance.'" (quoting *Rhodes*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly

deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is

In his Section 2254 application, Martinez raises five of the six IAC claims that the state courts summarily rejected: (1) trial counsel's failure to object when sentencing was announced, thus waiving allocution; (2) trial counsel's failure to make an opening statement; (3) trial counsel's failure to understand the law of blood evidence; (4) trial counsel's failure to object to reading the enhancement paragraph of the indictment; and (5) appellate counsel's failure to raise the allocution claim on appeal. *See, e.g.,* Dkt. No. 3 at 6-8; *compare id.*, *with, e.g.,* Dkt. No. 16-51 at 59-72 (State's answer filed in state court).

As in many cases the Court considers on Section 2254 review, here, the state trial court did not make explicit findings and conclusions and, after reviewing the habeas application, instead sent a certified record, including the State's answer to the CCA, *see* Dkt. No. 16-51 at 74-75, and the CCA denied the application "without written order," Dkt. No. 16-50; *Ex parte Martinez*, WR-86,366-01 (Tex. Crim. App. Mar. 15, 2017).

---

sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

Section 2254(d) deference – and, as to Martinez's application, the double deference applicable to Section 2254 review of IAC claims – nevertheless "applies even where there has been a summary denial." *Pinholster*, 563 U.S. at 187 (citing *Richter*, 562 U.S. at 98). And Martinez "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [CCA's] decision." *Id.* at 188 (quoting *Richter*, 562 U.S. at 98).

As set out above, in reviewing the CCA's decision – only "[a]fter a thorough review of the state-court record" – the Court "'must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Id.* (quoting *Richter*, 569 U.S. at 102); *see Evans*, 875 F.3d at 216; *see also Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018) ("Because the state courts provided no explanation for their denial of post-conviction relief, we must hypothesize the reasons that supported, or could have supported, the denial consistent with Supreme Court precedent. The decision is an 'unreasonable application' under 28 U.S.C. § 2254(d) only if, after this hypothetical inquiry, we determine there was no reasonable basis for it." (citations omitted)).

Martinez has not carried his burden.

First, as to the allocution claims [Grounds 1 and 5], "the right to allocution is not a right granted or protected by the federal constitution, and its denial presents no cognizable federal habeas issue." *Harrison v. Thaler*, No. 4:11-cv-695-A, 2012 WL

1409269, at *12 (N.D. Tex. Apr. 23, 2012) (citing *United States v. Reyna*, 358 F.3d 344, 349 (5th Cir. 2004) ("[T]he right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional.")). But the failure to allow a defendant to speak before sentencing may, in some situations, be a violation of Texas law. *See, e.g., Arnold v. Dretke*, No. 3:04-cv-1938-K, 2004 WL 2866917, at *4 (N.D. Tex. Dec. 10, 2004) (citing TEX. CODE CRIM. PROC. art. 42.07), *rec. adopted*, 2005 WL 65950 (N.D. Tex. Jan. 12, 2005). Here, Martinez fails to show that he met a statutory requirement under "which sentence cannot be pronounced" under Article 42.07 – the existence of a pardon; incompetency; misidentification following an escape from prison. *See* TEX. CODE CRIM. PROC. art. 42.07. Further, the right to allocution is waivable. *See, e.g., Eisen v. State*, 40 S.W.3d 628, 637 (Tex. App. – Waco Feb. 7, 2001, pet ref'd). Through the deferential lens of the AEDPA, the Court should therefore find that the denial of these claims amounts to either an unreasonable application of *Strickland* or an unreasonable application of the evidence.

Taking next Martinez's IAC claim based on trial counsel's failure to make an opening statement, a discretionary decision by trial counsel generally survives postconviction scrutiny if the decision is not "'so outrageous that no competent attorney would engage in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Indeed, "[t]he decision whether to make an opening statement falls within the zone of trial strategy." *United States v. Mitchell*, 9 F.3d 103, 1993 WL 481738, at *6 (5th

Cir. Nov. 4, 1993) (per curiam) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)). And, given the state court record, Martinez provides no basis for this Court to presume that waiving an opening statement was not a strategic choice here. *See Feldman*, 695 F.3d at 378. Thus, through the deferential lens of the AEDPA, the Court should also find that the state court's denial of this ground is neither an unreasonable application of *Strickland* nor an unreasonable application of the evidence.

Martinez further asserts that his trial counsel should have argued that the blood draws should have been suppressed because the evidence was not taken in accordance with section 724.012 of the Texas Transportation Code, which concerns blood evidence requested by a peace officer. But the state court record provides no basis to support this claim, as Martinez's blood was drawn by a trauma nurse at the hospital. *See* Dkt. No. 16-18.

Martinez's final ground is similarly frivolous. He argues that his counsel was constitutionally ineffective for failing to object when the prosecution read the enhancement paragraphs of the indictment (his two prior DWI convictions). But, "[u]nder Texas law, driving while intoxicated is a third degree felony when preceded by two prior DWI convictions – these two prior convictions are jurisdictionally required to elevate a DWI to a felony." *Rogers v. Quarterman*, No. 3:08-cv-554-G-BH, 2009 WL 1952992, at *3 n.7 (N.D. Tex. July 7, 2009) (citing TEX. PENAL CODE §§ 49.04, 49.09(b)(2)). Given this jurisdictional requirement, the denial of this claim too is neither an unreasonable application of *Strickland* nor an unreasonable application of

the evidence. *Cf. LeBlanc v. Quarterman*, No. 4:07-cv-196-A, 2008 WL 2330746, at *5 (N.D. Tex. May 28, 2008) ("LeBlanc's complaints related to trial counsel's failure to object to the admission and use of extraneous offense evidence do not warrant relief. LeBlanc complains that the jury charge mentioned two previous convictions for driving while intoxicated, but has not demonstrated how the charge was objectionable given the state's burden of proof in his case.").

In sum, applying the deferential *Strickland* standards – through the deferential lens of AEDPA – Martinez has not shown that the denial of any claim that either his trial counsel's or his appellate counsel's representation violated his rights under the Sixth Amendment amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g., Rhodes*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

**Recommendation**

The Court should deny the application for a writ of habeas corpus.

A copy of these amended findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and

...
...

recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 9, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE